**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHESTER L. BIRD,

      Petitioner - Appellant,

v.

WYOMING ATTORNEY GENERAL;
MICHAEL PACHECO, Wyoming
Department of Corrections State
Penitentiary Warden,

      Respondents - Appellees.

No. 17-8033
(D.C. No. 2:16-CV-00320-NDF)
(D. Wyo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

Chester Bird seeks a certificate of appealability (COA) to challenge the dismissal

of his application for relief under 28 U.S.C. § 2241 by the United States District Court for

the District of Wyoming. *See Montez v. McKinna*, 208 F.3d 862, 867 (10th Cir. 2000)

(requiring COA to appeal a denial of § 2241 relief). Because Mr. Bird does not make a

substantial showing of the denial of a constitutional right, we deny his request for a COA.

Mr. Bird was sentenced in 1994 to two concurrent life sentences in the custody of

the Wyoming Department of Corrections. Because of his life sentence, he is ineligible

for parole. *See* Wyo. Stat. Ann. § 7-13-402(a). Nevertheless, legislation passed in 2010

mandates that 10% of his prison-work income be placed in a personal savings account to

be distributed upon parole or discharge. *See* Wyo. Stat. Ann. § 7-16-205(a)(i). The only prisoners exempt from mandatory savings are those serving a sentence of death or life without the possibility of parole. *See id.* Although prisoners serving a life sentence and those serving a sentence of life without the possibility of parole are both ineligible for parole, prisoners with a life sentence (such as Mr. Bird) may have their sentences commuted. *See Bird v. Wyo. Bd. of Parole*, 382 P.3d 56, 62 (Wyo. 2016). Both types of prisoners may be pardoned. *See id.*

Mr. Bird filed suit in state court in 2015 seeking a declaratory judgment that, among other things, he should not be denied parole eligibility while he is statutorily required to save money for use upon release from prison. He argued that the new mandatory-savings statute repealed the statute that forecloses parole eligibility to life-sentence prisoners because it implied that a person paying into such an account could be released from prison. Characterizing this argument as raising an equal-protection claim and a statutory-interpretation claim, the state district court dismissed the complaint, concluding that Mr. Bird is similarly situated to others subject to the mandatory-savings statute because he may be released after commutation just as term-of-years prisoners may be released on parole. Mr. Bird also argued that requiring life-sentence prisoners to save money to help facilitate their release from incarceration is a violation of equal protection because, unlike the term-of-years prisoners, they are unlikely ever to be released. The court dismissed this claim because, although the likelihood is small, life-sentence prisoners may be released through commutation of a life sentence to a term of years.

Mr. Bird appealed to the Wyoming Supreme Court. In his pro se brief to that court he first argued that, as a matter of statutory interpretation, the mandatory savings statute made him eligible for parole. He then continued:

> The repugnancy of [the statute mandating savings and the statute making life prisoners ineligible for parole] arises under the doctrine of equal protection of the Fourteenth Amendment to the Constitution of the United States . . . .
> On its face, Wyoming Statute Annotated § 7-16-205(a)(i) prescribes that life sentenced prisoners are similarly situated to "release-eligible" (term of years) prisoners, but only to the extent that it requires a savings account. Otherwise a life sentence prisoner does not receive any other benefits afforded a "release-eligible" prisoner.

Aplt. App. Vol. 1 at 49. Later the brief concluded:

> In summary, however, the District Court and the Appellees contend that a life sentenced prisoner, like Bird, is not parole/release-eligible, except to the extent "that the legislature intended for the Department of Corrections to maintain a fund" and he is not parole/release-eligible until his sentence is actually commuted or pardoned by the Governor. This position is clearly contrary to the Constitution under *Reedy*[1] and *Jones*[2] and the State simply cannot have it both ways.

Aplt. App. Vol. 1 at 53.

The Wyoming Supreme Court affirmed. It said that the mandatory-savings statute appropriately provides for the "remote contingency" of a commuted life sentence even for life-sentence prisoners like Mr. Bird who are not eligible for parole. *Bird*, 382 P.3d at

---

[1] Referring to *Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011), which suggested, without deciding, that there is not a rational basis for requiring life-sentence prisoners to save for their eventual release.

[2] Referring to *Jones v. Houston*, No. 4:06CV3314, 2007 WL 3275125, at *11 (D. Neb. Nov. 2, 2007), which addressed mandatory-savings accounts under a system that allowed life-sentence prisoners to be reimbursed because they would not be released.

3

64–65. Noting that "[l]ife without parole sentences are reserved for the most egregious crimes," it said that "those sentenced to life according to law [have] better prospects for eventual release" and that requiring them to set aside money serves "a legitimate state interest in providing incentive to prisoners for good behavior that would enhance the possibility of leaving the prison system before the end of their lives." *Id.* at 63. Hence, there is "a rational basis for treating the two categories of life-sentenced prisoners differently with respect to the prisoner savings requirement," and there was no equal-protection violation in requiring Mr. Bird to save for the unlikely contingency of his release even though the life-without-parole prisoners were not required to save. *Id.* The court also held that the statute that forecloses life-sentence prisoners from parole eligibility does not violate equal protection because life-sentence prisoners are not "similarly situated" to term-of-years prisoners in that they have no vested right in ever being released. *See id.* at 63, 65.

On December 30, 2016, Mr. Bird filed his application for relief under § 2241. Construed liberally, *see Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007), it asserts that his right to equal protection is violated by either (1) the statutorily mandated savings requirement or (2) his statutory ineligibility for parole. The district court dismissed the challenge to mandatory savings without prejudice because it does not relate to the execution of his sentence and should have been brought under 42 U.S.C. § 1983 rather than 28 U.S.C. § 2241. As for the second claim, the district court dismissed it without prejudice on the ground that he had not exhausted his remedies in state court. In this

4

court Mr. Bird does not challenge the dismissal of his first claim but seeks a COA to challenge the dismissal of the second.

To obtain a COA, a habeas petitioner must make "a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Because his application was denied on procedural grounds, Mr. Bird faces a double hurdle. Not only must he make a substantial showing of the denial of a constitutional right, but he must also show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* If he fails to surmount either hurdle, he is not entitled to a COA. *See id.* at 484. Here we deny a COA because reasonable jurists could not debate that he suffered an equal-protection violation.

In reviewing equal-protection challenges to sentencing matters, the Supreme Court and this court have applied rational-basis review. *See McGinnis v. Royster*, 410 U.S. 263, 265-70 (1973) (good-time credit toward parole eligibility denied for prison time in county jails but granted to those released on bail pending sentencing); *United States v. Titley*, 770 F.3d 1357, 1359–62 (10th Cir. 2014) (same criminal conduct may be felony in one state but only misdemeanor in another, thereby affecting eligibility for sentence enhancement under the Armed Career Criminal Act); *United States v. Thurmond*, 7 F.3d 947, 953 (10th Cir. 1993) (disparate sentencing for cocaine base and

5

cocaine powder); *United States v. Easter*, 981 F.2d 1549 1558–59 (10th Cir. 1992) (same).  Mr. Bird has not argued for a different standard of review, so we apply it here.

The rational basis in this case is clear.  Offenses punished by a life sentence are generally more abhorrent than those punished by a term of years.  It is therefore rational to impose more severe sanctions—such as ineligibility for parole— on the former.  We see no equal-protection violation in Wyoming's decision not to allow parole for Mr. Bird, even though the possibility of his release may justify mandating saving of a percentage of his prison income.  No reasonable jurist could debate otherwise.

We **DENY** the application for a COA and **DISMISS** the appeal.

Entered for the Court


Harris L Hartz
Circuit Judge

6